UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

GLEN R. JEFFERY, JR.,

                     Plaintiff,

v.                                             Case No. 23-cv-241-pp

LT. COLE, CO PETERSON,
CO MOORE, CO JOHN DOE #1
CO JOHN DOE #2, CO JANE DOE #1,
JOHN DOE #3, SECURITY DIRECTOR JOHN KIND,
CAPTAIN BAUMANN, RN JOHN DOE,
RN JANE DOE, P. SCHREIBER,
DYLON RADTKE and MICHAEL HASES,

                     Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 6), SCREENING COMPLAINT UNDER 28 U.S.C. §1915A AND DENYING AS MOOT MOTION TO EXPEDITE SCREENING OF COMPLAINT (DKT. NO. 12)**

      Glen R. Jeffery, Jr., who is incarcerated at Wisconsin Secure Program Facility and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 6, screens his complaint, dkt. no. 1 and denies as moot his motion to expedite screening, dkt. no. 12.

**I.**     **Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 6)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case

1

without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On March 30, 2023, the court ordered the plaintiff to pay an initial partial filing fee of $1.98. Dkt. No. 11. The court received that fee on April 11, 2023. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay remainder of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include

2

"a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cnty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.   The Plaintiff's Allegations

The plaintiff was incarcerated at Green Bay Correctional Institution when the incident described in the complaint occurred. Dkt. No. 1 at ¶ 4. He has sued Lieutenant Cole, Officer Peterson, Officer Moore, Officers John Doe 1-3, Officer Jane Doe 1, Security Director John Kind, Captain Baumann, Nurse

3

John Doe, Nurse Jane Doe, P. Schreiber, Dylon Radtke and Michael Hases. Id. at 1.

The plaintiff alleges that all of the defendants knew he has epilepsy, catalepsy and an unspecified seizure disorder that cause him "to be rendered 'non conscious' and 'unable' to follow any given directives while in this state." Id. at ¶8. He states that he was in his cell in Green Bay's "RHU" (restrictive housing unit) when the incident occurred, and that he was not on any anti-convulsion medications to control his seizures. Id. at ¶9. The plaintiff doesn't say what date the incident took place, but administrative complaint exhibits attached to the complaint show that it occurred on July 21, 2020. Dkt. No. 1-2 at 2. He says he began to feel like he was going to have a seizure and, as he tried to get up and go to his emergency intercom button to alert staff, "he began to seize while standing up." Dkt. No. 1 at ¶¶10-12. The plaintiff alleges that he has a large physical stature and athletic build (6'5", 280 pounds) and "he hit the concrete cell floor and metal toilet seat on his descent into a 'non conscious' state." Id. at ¶13. He says he doesn't know how long he was unconscious, and he bases some of his complaint allegations on incident reports that Cole, Peterson, Moore and Doe defendants wrote. Id. at ¶¶13-15.

While doing rounds on the unit, Officer Moore allegedly noticed the plaintiff convulsing on the cell floor and transmitted "a medical emergency, unresponsive inmate seizing." Id. at ¶16. Moore allegedly "never left the cell front watching Jeffery seize while support and Lt. Cole arrived, cell front." Id. The plaintiff states that Cole arrived at the plaintiff's cell door and began giving

the plaintiff "directives to come to the door to be restrained, to receive medical treatment from seizing." Id. at ¶17. The plaintiff allegedly was not conscious and "never incepted [sic] these directives and therefore could not follow them if he wanted to." Id. Cole and the "C.O.s" allegedly left the cell front to "suit up in cell entry attire." Id. at ¶18. The plaintiff says that Cole called the "Administrative Duty Officer for approved use of force and cell entry," and Cole received approval to use "OC spray" and an "X26p taser gun" on the plaintiff. Id. at ¶19. According to the plaintiff, if "Cole checked he would have been informed of Jeffery's medical contraindication to both O.C. spray and X26p taser guns before implementing them on Jeffery's non conscious person[]." Id.

The plaintiff alleges that Cole opened the plaintiff's food port and "gave more directives that Jeffery could not comply with nor consciously received." Id. at ¶20. He states that while he was still "actively on the floor seizing," Cole "recklessly disregarded the potential of harm that his unjustified use of force would cause Jeffery and introduced a blast of O.C. phantom spray into the cell." Id. The plaintiff states that he awoke to an inability to breathe and a feeling of heat; at first, he thought he was trapped in a house fire in which he had previously sustained severe burns. Id. at ¶22. He says when he heard Cole yelling for him to come to the door, he was confused and began crawling in the opposite direction, but he believed he was obeying directions. Id. The plaintiff states that eventually he "rerouted," got to the door and put his hands out of the trap to be "cuffed up." Id. at ¶24.

5

The plaintiff alleges that after the cell door was opened, he passed out from the aftereffects of his seizure and he was "left hanging face-forward connected by a tether only, the CO's all left [the plaintiff] like this hanging passed out connected to the door and ran off toward the beginning of the tier." Id. at ¶26. He says that eventually he was picked up and he had mucus and drool hanging from his face and his pants were soiled with urine, which is a natural effect of seizing. Id. at ¶27. The plaintiff states that he was taken to the "RHU's Triage HSU room," where a nurse assessed him; he says that part of his memory is "slightly distorted." Id.

The plaintiff claims that Cole, Peterson, Moore, John Does 1-3 and Jane Doe 1 knew about his seizure disorder, saw him seizing and used incapacitating agents or failed to intervene to stop the use of them, in violation of the Eighth Amendment's prohibition on the excessive use force and deliberate indifference to a serious medical need. Id. at ¶¶30-31.

The plaintiff claims that Kind approved the use of force in violation of his Eighth Amendment rights and Fourteenth Amendment right to equal protection. Id. at ¶32.

The plaintiff claims that Radtke, Baumann, Hases and Schreiber "chose to undermine the inflicted use of corporal punishment" by Cole on the plaintiff while he was seizing, and that they covered up the wrongdoings by creating falsified records stating that Cole had acted reasonably when introducing incapacitating agents upon a seizing and unconscious individual. Id. at ¶33. The plaintiff claims that the defendants' actions amounted to deliberate

6

indifference to his health and safety as well as a Fourteenth Amendment equal protection violation "by unfair treatment to [the plaintiff] versus other inmates with known medical conditions of epilepsy, catalepsy, or unspecified seizure disorders, only inmates that the DOC label African American is subjected to these sorts of treatment." Id.

The plaintiff claims that Nurse John Doe 1 and Nurse Jane Doe 1 had access to his medical files and knew about his condition and showed reckless disregard by failing to intervene and review the plaintiff's electronic medical records "prior to okaying the use of incapacitating agents on [the plaintiff] while seizing." Id. at ¶34.

For relief, the plaintiff seeks declaratory relief, "permanent preliminary injunctions" ordering the Department of Corrections to implement safety precautions reviewing the use of force and incapacitating agents on conscious and unconscious incarcerated individuals and ordering that due to the plaintiff's medical condition, the DOC be prohibited from using incapacitating agents or electronic weapons on him. Id. at ¶¶37-39. He also seeks monetary damages. Id. at ¶¶40-46.

C. Analysis

To state a claim for excessive use of force under the Eighth Amendment, a plaintiff must allege that a defendant applied force maliciously and sadistically to cause harm rather than in a good faith attempt to maintain or restore discipline. Hudson v. McMillian, 503 U.S. 1, 6-7 (1992); Rice ex rel. Rice v. Corr. Med. Servs., 675 F.3d 650, 668 (7th Cir. 2012). Factors relevant to a

defendant's mental state include the need for force, the amount of force used, the threat reasonably perceived by officers, efforts made to temper the severity of the force, and the extent of injuries caused by the force. Whitley v. Albers, 475 U.S. 312, 321 (1986); Rice, 675 F.3d at 668. A "prisoner need not show a 'significant injury' in order to have a good claim under the [E]ighth [A]mendment, if a guard inflicted pain maliciously or sadistically." Guitron v. Paul, 675 F.3d 1044, 1046 (7th Cir. 2012) (citing Hudson, 503 U.S. at 7).

The plaintiff may proceed on an excessive force claim against defendant Cole based on allegations that Cole unnecessarily used OC spray on the plaintiff when the plaintiff was unconscious after suffering a seizure in his cell. The plaintiff also may proceed on Eighth Amendment claims against defendants Peterson[1], Moore, John Does 1-3 and Jane Doe 1 for allegedly failing to intervene in the use of force. See Yang v. Hardin, 37 F.3d 282, 285 (7th Cir. 1994).

The plaintiff also claims that these defendants acted with deliberate indifference to his medical needs in violation of the Eighth Amendment. A deliberate indifference claim "based upon a violation of the Eighth Amendment has both an objective and a subjective element: (1) the harm that befell the prisoner must be objectively, sufficiently serious and a substantial risk to his or her health or safety, and (2) the individual defendants were deliberately indifferent to the substantial risk to the prisoner's health and safety." Collins v.

---

[1] The court presumes that CO Peterson was one of the officers at the plaintiff's cell front when Cole allegedly sprayed the OC spray into his cell.

8

Seeman, 462 F.3d 757, 760 (7th Cir. 2006) (citing Matos v. O'Sullivan, 335 F.3d 553, 556 (7th Cir. 2003)); Farmer v. Brennan, 511 U.S. 825 (1994). The court assumes the plaintiff's seizure that allegedly rendered him unconscious satisfies the objective prong. Regarding the subjective element, "[d]eliberate indifference requires a showing of '"more than mere or gross negligence, but less than the purposeful or knowing infliction of harm."' Collins, 462 F.3d at 762 (quoting Matos ex. rel. Matos v. O'Sullivan, 335 F.3d 553, 557 (7th Cir. 2003)). The required showing is characterized as "something approaching a total unconcern for [the individual's] welfare in the face of serious risks." Duane v. Lane, 959 F.2d 673, 677 (7th Cir. 1992).

The plaintiff may proceed on an Eighth Amendment medical care claim against defendants Cole, Peterson, Moore, John Doe 1-3 and Jane Doe 1 for not treating the plaintiff's medical condition and instead using OC spray or failing to intervene in the use of the spray. This claim includes an allegation that the plaintiff had a contraindication to OC spray, although these defendants may later argue that they did not know about the contraindication.

The plaintiff's allegations that Security Director John Kind approved the use of force without consulting the health services unit does not state a claim. The plaintiff has not alleged that Kind knew the plaintiff was allegedly unconscious in his cell, and the plaintiff acknowledges that Kind did not know the plaintiff had a contraindication to OC spray. The plaintiff has not stated a plausible claim for relief against Kind.

9

The plaintiff also has not stated a claim against defendants Baumann, Schreiber, Radtke and Hases for allegedly writing false reports about the incident that amounted to a "cover-up." The plaintiff has not alleged that these defendants had any involvement in the incident itself. In general, prison officials who deny administrative complaints "but who otherwise did not cause or participate in the underlying conduct" may not be held liable under §1983. Owens v. Hinsley, 635 F.3d 950, 953 (7th Cir. 2011) (citing George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007)); see also Burks v. Raemisch, 555 F.3d 592, 595 (7th Cir. 2009). "Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not." George, 507 F.3d at 609-10.

The plaintiff also claims that the defendants violated his right to equal protection. "Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." Lisle v. Welborn, 933 F.3d 705, 719 (7th Cir. 2019) (citing Wolff v. McDonnell, 418 U.S. 539, 556 (1974)). To state such a claim, an incarcerated person must allege that the "defendants intentionally treated him differently because of his race . . . ethnicity, sex, religion, or other proscribed factor . . . ." Id. at 719–20 (citing Ortiz v. Werner Enters., Inc., 834 F.3d 760 (7th Cir. 2016)); see also David K. v. Lane, 839 F.2d 1265, 1271-72 (7th Cir. 1988) (collecting cases and noting that discrimination must be intentional, purposeful or have a

10

discriminatory motive). The plaintiff has not stated a claim for violation of his right to equal protection. He alludes to different treatment of Black incarcerated individuals, but he has not alleged that the defendants treated him differently from similarly situated persons based on his race.

The plaintiff's conclusory allegation that RN John Doe and RN Jane Doe did not check his medical records before approving the use of OC spray does not state a plausible claim. The plaintiff himself alleges that Cole called the "Administrative Duty Officer"—not nurses from the Health Services Unit—to get permission to use excessive force. It is unlikely that nurses in the Health Services Unit would have had the authority to authorize the use of excessive force. The court will not allow the plaintiff to proceed against RN John and Jane Doe.

The plaintiff may proceed on an Eighth Amendment excessive force claim against Cole and on failure to intervene in excessive force claims against Peterson, Moore, John Does 1-3 and Jane Doe 1. The plaintiff may also proceed on an Eighth Amendment medical care claim against Cole, Peterson, Moore, John Does 1-3 and Jane Doe 1. The plaintiff may proceed against the defendants in their individual capacities. The court will dismiss all remaining claims and defendants. The plaintiff will need to use discovery to identify the Doe defendants.

### III. Motion to Expedite Screening of the Plaintiff's Complaint (Dkt. No. 12)

On October 2, 2023, the court received from the plaintiff a motion asked the court to expedite its screening of his complaint. Dkt. No. 12. He stated that

11

the case had been on the court's docket for six months and he wanted screening expedited so that favorable evidence would not be destroyed "in bad faith by the defendants over the three (3) years that has envloped [sic] since plaintiffs injuries occurred." Id.

The court has screened the complaint, and will deny this motion as moot.

### IV. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 6.

The court **DENIES AS MOOT** the plaintiff's motion to expedite screening. Dkt. No. 12.

The court **ORDERS** that defendants Security Director John Kind, Captain Baumann, RN John Doe, RN Jane Doe, P. Schreiber, Dylon Radtke and Michael Hases are **DISMISSED**.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendants Lt. Cole, CO Peterson and CO Moore. Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the complaint within sixty (60) days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$348.02** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an

amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to Warden at Wisconsin Secure Program Facility.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

---

[2] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

13

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin, this 27th day of October, 2023.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**